UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JOHN COLE,

                              Petitioner,

          -vs-                          **No. 6:14-CV-06606(MAT)**
                                        **DECISION AND ORDER**
WILLIAM KEYSER, Superintendent,

                              Respondent.

---

## INTRODUCTION

Proceeding <u>pro</u> <u>se</u>, John Cole ("Petitioner") has filed a
Petition for a writ of habeas corpus pursuant to 28 U.S.C. 2254,
challenging the constitutionality of the judgment entered against
him on October 11, 2011, in of New York State, Erie County Court
(DiTullio, J.), following a non-jury verdict convicting him of one
count of Robbery in the Third Degree (N.Y. Penal Law § 160.05).

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

## I.   Petitioner's Trial

### A.   The Prosecution's Case

In August of 2010, Gloria Kozub lived ("Kozub") at 238 West
Utica Street in the City of Buffalo with her then-fiancé, Antwan
Lindsay ("Lindsay"). According to Kozub, Petitioner also resided at
the apartment occasionally. At about 11 a.m. on August 12th, she was
waiting for the bus at 178 West Utica Street to go downtown to pay
her rent. Kozub was carrying $560 in cash ($550 for her current
rent and $10 for late fees). Kozub testified that Petitioner walked
up to her, using one crutch, and demanded money that she had

promised to give him. When Kozub informed Petitioner that she would pay him after she had paid her rent, Petitioner punched her in the left eye, pushed her to the ground, and snatched her purse.

Kozub acknowledged that, at the felony hearing, she mistakenly testified that Petitioner struck her in the right eye rather than the left eye. She explained that the error was due to her nervousness at testifying in court for the first time. Kozub also acknowledged that, although Petitioner had physically attacked her in the past, she told an investigator otherwise because she was attempting to protect Petitioner, who was Lindsay's uncle.

Officer Mary May ("Officer May") of the Buffalo Police Department testified that she responded to Kozub's 911 call. Kozub named Petitioner as the person who had robbed her, describing him as a 230-pound black male, between 6-foot-2 and 6-foot-5, who used a crutch. Kozub told Officer May that she had $560 in her purse when Petitioner stole it. The following day, Kozub gave a written statement to Detective Ed Cotter, who observed bruising to her left eye.

Lieutenant Chris Kochersberger ("Lt. Kochersberger") of the BPD testified that after four days, he spotted Petitioner in the neighborhood and arrested him for the robbery. At the time, Lt. Kochersberger seized $560.00 from Petitioner's wallet. Petitioner had an additional $22.00, but Lt. Kochersberger

recovered it in a different compartment of his wallet and did not seize it as potential proceeds of the robbery.

Marian Buckley ("Buckley"), an employee of BCG Property Management, was in charge of collecting Kozub's rent. She testified that Kozub had made her rent payments over the past several months, but she missed her payment for August 2010. Buckley indicated that Kozub's monthly rent was $550.00, but she occasionally paid an extra $10.00 in order to make up for late payments.

### B.    The Defense Case

Petitioner testified that he did not commit the alleged robbery, and that he was not even in the area of 178 West Utica on the morning in question. Petitioner stated that he was on Main and Court Streets, the same place where he was arrested, sitting down with some friends.

Petitioner also related that he had severe degenerative arthritis in both hip, and he required a crutch to walk. He asserted that it was impossible for Kozub's allegations to be true, because, as a result of his medical condition since he could not have physically performed the actions of which Kozub accused him.

Petitioner confirmed that Kozub had been dating Lindsay, his nephew, who had a drug addiction. According to Petitioner, Lindsay was physically abusing Kozub and was spending all of her money as well as Rosalind's money on crack cocaine. Petitioner insinuated

that Kozub and Lindsay were robbing disability checks from people who lived in their house.

Petitioner asserted that Kozub had fabricated the robbery incident in order to use the $560 to purchase more crack cocaine.[1] Petitioner testified that the money in his wallet was from a disability payment, and that the $560.00 was not separate from the rest of the other cash in his wallet at the time of his arrest.

**C.    The Verdict and Sentence**

The trial court found Petitioner guilty as charged in the indictment. Petitioner was sentenced, as a second felony offender, to an indeterminate term of three and one-half to seven years in prison.

**D.    The Direct Appeal and Post-Judgment Motions**

Represented by new counsel, Petitioner appealed his conviction to the Appellate Division, Fourth Department, of New York State Supreme Court ("Fourth Department"). The conviction was unanimously affirmed on November 8, 2013. People v. Cole, 111 A.D.3d 1301, 974 N.Y.S.2d 709 (4th Dep't 2013). As appellate counsel explained to Petitioner, because the arguments raised on appeal relied on the Fourth Department's statutory power to review questions of fact, and the New York Court of Appeals only may review questions of law, appellate counsel did not seek leave to appeal.

---

[1]
Kozub admitted that Lindsay abused crack cocaine, and that some other individuals who stayed at 238 West Utica also used crack cocaine.

Petitioner filed a <u>pro se</u> motion to vacate the judgment pursuant to New York Criminal Procedure Law ("CPL") § 440.10 on March 19, 2012, in the trial court. The motion was denied without a hearing on December 17, 2012.[2]

Likewise, Petitioner's <u>pro se</u> application for a writ of error <u>coram nobis</u> was denied on March 21, 2014. <u>People v. Cole</u>, 115 A.D.3d 1274 (4th Dep't), <u>lv. denied</u>, 23 N.Y.3d 1019, <u>recons. denied</u>, 23 N.Y.3d 1060 (2014).[3]

### E. The Federal Habeas Proceeding

Petitioner then timely instituted this action by filing a petition on October 20, 2014. Respondent answered the petition and filed a memorandum of law in opposition, along with the relevant state court records. Before and after Respondent answered the petition, Petitioner filed a slew of miscellaneous motions, including multiple motions for discovery and for appointment of counsel.

For the reasons discussed below, the request for a writ of habeas corpus is denied, the petition is dismissed, and the pending motions are dismissed as without merit.

### III. Discussion

---

[2]

All documents related to Petitioner's CPL § 440.10 motion are attached as Respondent's Exhibit C ("Resp't Ex. C.") in the separately bound volume of state court records submitted by Respondent in connection with his answer.

[3]

All documents related to Petitioner's <u>coram nobis</u> motion, including the briefs, the Trial Court's order, and leave application, are attached as Resp't Ex. D.

**A.    Failure of the Prosecutor to Disclose Favorable Evidence (Ground One)**

As his first ground for relief, Petitioner asserts that the "[p]rosecutor failed to disclose evidence favorable to [him]," namely, a "[v]ideotape . . . that show[s] [he] was not at the crime at the time alleged crime took place. Videotape is in prosecutor's possession but never disclosed." (Pet. at 7, ¶ 12(a)). Petitioner is referring to the videotape footage from a surveillance camera located at Main Street and Court Street, which Petitioner claims would have his established defense—that he was sitting with friends at Main and Court Streets at the time Kozub was robbed, and therefore was not the perpetrator.

Respondent argues that Petitioner has procedurally defaulted on this claim by failing to raise it on direct appeal "or, to the extent that a CPL 440.10 motion was the appropriate vehicle," by failing to seek leave to appeal the denial of his CPL § 440.10 motion in the Fourth Department. (See Respondent's Memorandum of Law ("Resp't Mem.") at 4-5). What Respondent appears to be arguing is that if the claim is considered a record-based claim that should have been raised on direct appeal, then it is unexhausted, but must be deemed exhausted and procedurally defaulted because Petitioner no longer has any state remedies available to him. See Grey v. Hoke, 933 F.2d 117, 120-21 (2d Cir. 1991). Alternatively, Respondent appears to argue, if the claim is based on matters dehors the record and properly was raised in his CPL § 440.10

motion, then the claim is unexhausted because he did not seek leave to appeal the denial of that motion by the Trial Court; because he could still apply for permission to file a late leave application with the Fourth Department, the claim cannot be deemed exhausted under controlling Circuit precedent. See Pesina v. Johnson, 913 F.2d 53, 54 (2d Cir. 1990) (per curiam).

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that-(A) the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A). "To fulfill the exhaustion requirement, a petitioner must have presented the substance of his federal claims 'to the highest court of the pertinent state.'" Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994) (quotation omitted), cert. denied, 514 U.S. 1054 (1995). A petitioner can fulfill the exhaustion requirement by means of a direct appeal or a collateral motion, so long as he "invok[es] one complete round[,]" O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999), of the state's established appellate review process. See, e.g., Felder v. Goord, 564 F. Supp.2d 201, 215 (S.D.N.Y. 2008) ("In order to comply with 28 U.S.C. § 2254(c), a New York State petitioner for federal habeas corpus who fails to raise a claim on direct appeal must exhaust all available post-conviction remedies under [CPL]

§ 440.10.") (citing <u>Bacchi v. Senkowski</u>, 884 F. Supp. 724, 730-31 (E.D.N.Y. 1995)).

Here, Petitioner did raise this issue in his CPL § 440.10 motion to vacate the judgment, stating that as a result of state interference in denying him the appointment of "permanent" counsel at critical stages of the proceeding, the Buffalo police destroyed critical exonerating evidence (i.e., the surveillance camera videotape footage). In a decision and order dated December 20, 2012, the trial court denied the motion, finding that Petitioner first was appointed counsel at his arraignment on August 17, 2010, at his arraignment, and that he was "continuously represented by counsel thereafter." (CPL § 440.10 Order at 4). The trial court also noted that Petitioner failed to offer any evidence that the "prosecution ever possessed the video surveillance recording of the crime scene of interfered in any way with respect to the defense gaining access to said videotape." (<u>Id.</u> at 5). In any event, the trial court found, that because the claims forming the basis of the alleged prosecutorial misconduct "are ones that appeared or could have been made to appear on the face of the trial record, the proper method to challenge such errors is by way of an appeal[.]" (<u>Id.</u> (citing <u>People v. Cooks</u>, 67 N.Y.2d 100, 103 (1986)). Petitioner subsequently filed an application for leave to appeal to the Fourth Department, but his papers were returned to him because he failed to include all necessary papers required by N.Y. Comp.

Code R. & Regs., tit. 22, § 1000.13(a)(5). (See Resp't Ex. C).
Thus, it does not appear that Petitioner fully exhausted this
claim. However, the Court need not resolve the potentially complex
procedural default and exhaustion issues presented by this claim,
as it is easily resolved on the merits against Petitioner. See
Boddie v. New York State Div. of Parole, 285 F. Supp.2d 421, 428
(S.D.N.Y. 2003) (citation omitted).

### 1. Factual Background of Claim

Petitioner indicates that on August 30, 2010, the attorney
assigned to his case, Shawn McDonald, Esq. ("trial counsel")
visited Petitioner in jail. However, the jail's visitor record
submitted by Petitioner in connection with his post-judgment coram
nobis motion indicates that Attorney McDonald visited him on
September 1, 2010, from 3 p.m. to 3:40 p.m. (See Resp't Ex. D).
Petitioner asserts that at their first meeting, which the record
indicates was on September 1st, not August 30th, he directed trial
counsel to immediately obtain a court order to secure the
videocamera footage recorded by the surveillance camera at Main and
Court Streets on the morning of August 12, 2010. On September 2,
2010, trial counsel submitted a request pursuant to the Freedom of
Information Law ("FOIL"), see N.Y. Public Officers Law, Art. 6,
requesting a copy of the "[r]ecording of Buffalo street camera
located at Main and Court Street, for the date9s0 of 8/12/10,
starting at approximately 10:30 AM until 12:30 PM." (See Resp't

Ex. C). The record indicates that Captain Mark Antonio ("Capt. Antonio") of the Buffalo Police Department subsequently advised trial counsel that the surveillance camera footage was no longer available.

Petitioner further pursued the issue by filing his own FOIL request on December 19, 2010, with the Buffalo Police Department. By letters dated January 3, 2011, and January 6, 2011,[4] Capt. Antonio informed him that the footage from the surveillance camera at Main and Court Streets was no longer available because "the request [from Trial Counsel] came to [him] after September 2, 2010[,] and at that time [the Buffalo Police Department] only preserved footage for a period of 15-18 days due to a lack of memory with the computers." (See Resp't Ex. C). Petitioner subsequently filed an appeal with the City of Buffalo Department of Law. In a letter dated February 3, 2011, Petitioner's FOIL appeal was denied as moot because he had failed to show that the requested records actually existed, a condition precedent to bringing a FOIL appeal. (See Resp't Ex. C).

Petitioner apparently sent further correspondence to Capt. Antonio, who responded in a letter dated October 27, 2011, indicating that the department "only store[s] footage for a period of 20 days." (See Resp't Ex. C).

---

[4] The January 6th letter clarified what was apparently to be a typographical error (the date indicated in the January 3rd letter was 3/12/2010 rather than 8/12/2010). (See Resp't Ex. C).

Petitioner subsequently litigated the denial of his request for the surveillance camera footage in his CPL § 440.10 motion, as discussed above.

### 2.   Relevant Legal Principles

As a matter of due process, the government "has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." United States v. Coppa, 267 F.3d 132, 139 (2d Cir. 2001) (quoting Brady v. Maryland, 373 U.S. 83, 87 (1963)). "Favorable evidence includes not only evidence that tends to exculpate the accused, but also evidence that is useful to impeach the credibility of a government witness." Id. (citing Giglio v. United States, 405 U.S. 150, 154 (1972)). Evidence is "material" for Brady purposes if it "could reasonably [have been] taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 435 (1995). To prove a "true" Brady violation, a petitioner must establish the following elements: (1) the willful or inadvertent suppression by the government (2) of evidence that is favorable to the accused, (3) the non-disclosure of which resulted in prejudice to the accused. E.g., Strickler v. Greene, 527 U.S. 263, 281-82 (1999).

### 3.   Application

In denying the CPL § 440.10 motion, the trial court found, inter alia, that Petitioner had failed to demonstrate "suppression"

of the videotape, because he failed to offer any evidence that the "prosecution ever possessed the video surveillance recording of the crime scene [sic][5]. . . ." (CPL § 440.10 Order at 5). However, "a prosecutor can be held to have suppressed evidence within the meaning of Brady even if the defendant has not requested such evidence, and a prosecutor can 'suppress' evidence even if he has acted in good faith and even if the evidence is 'known only to police investigators and not to the prosecutor,'" Coppa, 267 F.3d at 140 (internal citations omitted; quoting Kyles, 514 U.S. at 438 (explaining that the government should actively seek Brady material in its files and in the files of related agencies reasonably expected to have possession of such information)). Although the trial court misstated the law, the error was harmless because this Court finds an independent basis to conclude that Petitioner has failed to demonstrate "suppression" of the videotape.

The documents in the record indicate that the Buffalo Police Department retained the surveillance videocamera footage for at most 20 days (as indicated in Capt. Antonio's letter), and possibly only 15 to 18 days (according to the City's Department of Law). Twenty days from Thursday, August 12, 2010, was Wednesday, September 1, 2010. Trial counsel's letter request was dated

---

[5]

Petitioner does not allege that the surveillance camera from which he sought footage was located at the crime scene at 178 West Utica Street. Rather, the camera in question was located at Main and Court Streets, where Petitioner testified he was hanging out with friends at the time of the robbery. (E.g., Trial Transcript at 123, 128-20).

September 2, 2010, which was 21 days after the date of the incident. Therefore, the 20 days for which footage is retained had expired the day before trial counsel mailed his letter to the Buffalo Police Department. There is no suggestion that, at that point in time, either the Buffalo Police Department or the prosecution had actual or constructive knowledge that Petitioner was claiming that he was at Main and Court Streets at the time of the crime involving Kozub, or Petitioner was going to assert that the footage from the surveillance videocamera at that location would establish that he was not at the crime scene at the relevant time. Assuming arguendo the police had knowledge of the videocamera footage simply because it was a camera operated by their department, Petitioner did not establish that the police had actual or constructive knowledge that the videocamera footage for that day and location was in any way relevant to the investigation into Petitioner's involvement in the Kozub robbery. The prosecution likewise had no actual or constructive knowledge that the videocamera footage for that day and location was in any way relevant to the investigation into Petitioner's involvement in the Kozub robbery, let alone that, according to Petitioner, it was potentially exculpatory. Therefore, Petitioner has not demonstrated that the prosecution "suppressed" the videocamera footage for purposes of the Brady analysis. See, e.g., Shakur v. United States, 32 F. Supp.2d 651, 673 (S.D.N.Y. 1999) (defendant's claim that the

government violated its <u>Brady</u> obligations of disclosure failed because (1) the prosecution team had no knowledge, actual or imputed, of [the police officer] or his undercover reports, and so, not possessing that information, cannot be faulted for not disclosing it").

To the extent the petition can be construed as asserting a claim under <u>California v. Trombetta</u>, 467 U.S. 479, 488 (1984), and <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988), such a claim is without merit. In <u>Trombetta</u>, the Supreme Court held that any duty of a state to preserve evidence "must be limited to evidence that might be expected to play a significant role in the suspect's defense." 467 U.S. at 488. Even assuming <u>arguendo</u> that the police and the prosecution had no reason to expect that the surveillance camera footage from a location other than the location where the robbery occurred would be relevant to Petitioner's defense, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." <u>Youngblood</u>, 488 U.S. at 58. Petitioner has not shown bad faith on the part of the Buffalo Police Department in failing to retain the video footage. <u>See</u> <u>Trombetta</u>, 467 U.S. at 488 (noting no due process violation where failure to preserve evidence was in good faith and in accord with normal practice).

**B. Ineffective Assistance of Trial Counsel (Ground Two)**

As ground two of the petition, Petitioner asserts a claim of ineffective assistance of trial counsel, but his allegations are virtually incomprehensible; he mainly seems to reference his previous filings in state court and he does not set forth any non-conclusory facts in support of this ground for relief. "It is well-established that '[c]onclusory allegations . . . not supported by a statement of specific facts do not warrant habeas relief.'" Webb v. Griffin, No. 10-CV-0585(MAT), 2011 WL 3738974, at *8 (W.D.N.Y. Aug. 24, 2011) (quoting James v. Borg, 24 F.3d 20, 26 (9th Cir.) (citation omitted), cert. denied, 513 U.S. 935 (1994); citing United States v. Fisher, 38 F.3d 1144, 1147 (10th Cir. 1994)). The Court "is not required to fashion [Petitioner's] arguments for him where his allegations are merely conclusory in nature and without supporting factual averments." Fisher, 38 F.3d at 1147.

Moreover, Petitioner concedes that he did not raise his ineffective assistance of trial counsel claim on direct appeal—an omission for which he blames appellate counsel—or in a CPL § 440.10 motion to vacate. Therefore, it appears that ground two is unexhausted.

Petitioner states that he raised ineffective assistance counsel trial counsel claims in his coram nobis application, but in that pleading, he only asserted ineffective assistance of trial

counsel as the basis for finding appellate counsel ineffective. According to the prevailing Second Circuit precedent on this issue, a <u>coram</u> <u>nobis</u> motion is the incorrect procedural vehicle for exhausting a claim of trial counsel's ineffectiveness. <u>See</u> <u>Turner v. Artuz</u>, 262 F.3d 118, 121 (2d Cir. 2001) ("[A] petitioner cannot show exhaustion unless he has 'fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts[,]'" but "[t]he only constitutional claim Turner was permitted to raise in seeking a writ of error <u>coram</u> <u>nobis</u> was ineffective assistance of appellate counsel, a claim that is distinct from [the prosecutorial misconduct] claims . . . in procedural terms under state law and in their federal constitutional sources.") (quotation omitted; emphasis in original); <u>accord</u>, <u>e.g.</u>, <u>Rush v. Lempke</u>, 500 F. App'x 12, 15 (2d Cir. 2012) (summary order).

To the extent that Plaintiff's ineffective assistance of trial counsel claims are matters of record that could have been raised on direct appeal, they must be deemed exhausted and procedurally defaulted. <u>See</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n. 1 (1991) (when a "petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred," federal habeas courts also must deem the claim procedurally defaulted); <u>Sweet v. Bennett</u>, 353 F.3d 135,

139-40 (2d Cir. 2003) (habeas petitioner's claim that trial counsel rendered ineffective assistance in failing to object when trial court instructed jury on second degree murder and first degree manslaughter in the conjunctive, rather than in the alternative, was procedurally defaulted, since petitioner failed to raise claim on direct appeal, as required under New York law; counsel's alleged error was particularly well-established in the trial record). The on-the-record ineffective assistance claims must be dismissed as subject to an unexcused procedural default, because Petitioner cannot show cause or prejudice, or that failure to consider the claims will result in a fundamental miscarriage of justice. See Coleman, 501 U.S. at 748. Petitioner contends that appellate counsel's ineffectiveness in failing to assert the on-the-record claims is "cause" to excuse the procedural default, but Petitioner does not have a meritorious claim of ineffective assistance of appellate counsel, as discussed infra. This forecloses him from showing cause. His inability to show cause obviates the need to consider prejudice. See Stepney v. Lopes.

As for the miscarriage of justice exception, a petitioner needs to show that he is "factually" as opposed to "legally" innocent. See Bousley v. United States, 523 U.S. 614, 623 (1998). To be "credible," a claim of actual innocence must be supported by "*new* reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

evidence-that was not presented at trial." <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995) (emphasis supplied). The Court recognizes that Petitioner maintains his innocence based on the surveillance camera footage of Main and Court Streets which the Buffalo Police Department discarded (due to computer memory storage limitations) prior to receiving Trial Counsel's FOIL request. However, Petitioner was aware of this evidence at the time of trial, and therefore it cannot be considered "new." Furthermore, its exculpatory value is entirely speculative as Petitioner has not given any indication as to where the camera was aimed or whether Petitioner in fact was within the area captured by the camera. Finally, the Court has found that, prior to the Buffalo Police Department's destruction of the camera footage, the prosecution did not have actual or constructive notice that the footage from the camera at Main and Court Streets on August 12, 2010, was in any way relevant to the incident involving Kozub, much less favorable to Plaintiff.

To the extent that Petitioner's ineffective assistance of trial counsel claims are off-the-record matters that are properly raised in a collateral motion to vacate pursuant to CPL § 440.10, they are unexhausted, because Petitioner could seek permission to file a late appeal with regard to the denial of his CPL § 440.10 motion. See Pesina, Alternatively, he could file another CPL § 440.10 motion, since "[t]here is no time limit on the filing of

CPL 440.10 motions[.]" <u>People v. Jackson</u>, 78 N.Y.2d 638, 646 (1991). Because the unexhausted, off-the-record ineffective assistance claims are entirely conclusory, the Court elects to dismiss them pursuant to 28 U.S.C. § 2254(b)(2). <u>See</u> <u>Webb</u>, 2011 WL 3738974, at *9 ("[I]nvocation of § 2254(b)(2) is particularly proper here, in light of Petitioner's failure to set forth any comprehensible allegations in support of his contention that he was denied the effective assistance counsel.") (citations omitted); <u>Hawkins v. Kirkpatrick</u>, No. 11-CV-00172 MAT, 2012 WL 5499631, at *8 (W.D.N.Y. Nov. 13, 2012) ("Because the Court finds the claim to be wholly meritless, it has the discretion to dismiss the petition notwithstanding Petitioner's failure to exhaust.") (citing 28 U.S.C. § 2254(b)(2); footnote omitted).

**C. Ineffective Assistance of Appellate Counsel (Ground Three)**

As his third ground for relief, Petitioner asserts that appellate counsel was ineffective. Petitioner's allegations on this point again are difficult to comprehend, but the Court will presume that Petitioner intends to re-assert the claims of ineffective assistance of appellate counsel that he raised in his motion for a writ of error <u>coram</u> <u>nobis</u>. There, Petitioner faulted appellate counsel for declining to argue that trial counsel was ineffective for (1) failing to move to dismiss the indictment on the ground that the prosecution did not indict him within 45 days; (2) failing to preserve for appellate review his challenge to the sufficiency

of the evidence; (3) failing to timely request the videotape footage from the surveillance camera at Main and Court Streets; (4) failing to investigate the case thoroughly and familiarize himself with the record; (5) failing to secure alibi witnesses; (6) failing to ensure that the trial court issued a written ruling on every aspect of the defense's pre-trial omnibus motion; (7) failing to object to prosecutorial misconduct based on the alleged withholding of the victim's arrest record; and (8) failing to argue that the indictment was defective because the victim perjured herself before the grand jury. The Fourth Department summarily denied Petitioner's application for coram nobis relief, and his requests for leave to appeal and reconsideration were denied by the Court of Appeals.

### 1. Legal Principles

A lawyer's representation is constitutionally deficient where it (1) falls "below an objective standard of reasonableness;" and (2) there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Strickland's two-pronged standard also applies to appellate counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir.) (citation omitted), cert. denied, 513 U.S. 820 (1994). It is not sufficient for a petitioner to show that appellate counsel omitted a colorable argument. Jones v. Barnes, 463 U.S. 745, 751 (1983). Rather, he

must demonstrate that appellate counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000).

### 2. Alleged Errors by Trial Counsel that Appellate Counsel Should Have Asserted

#### a. Failure to Move to Dismiss the Indictment

Petitioner argues that appellate counsel should have argued that trial counsel was ineffective due to his failure to move to dismiss the indictment pursuant to CPL 190.80 on the basis that the prosecution did not indict him within 45 days. "CPL § 190.80 provides for release from jail at the expiration of 45 days 'without the occurrence of any grand jury action . . . .'" People v. Hosler, 543 N.Y.S.2d 631, 631 (Sup. Ct. 1989) (quoting N.Y. Crim. Proc. Law § 190.80). CPL § 190.80 simply does *not* provide for the dismissal of the indictment in the event that no grand jury action is taken within 45 days. Even if trial counsel had made the motion as requested by Petitioner, the trial court could not have granted the relief he sought, i.e., dismissal of the indictment. Trial counsel's failure to make such a motion was not deficient performance; nor did it prejudice Petitioner. Appellate counsel was not ineffective in declining to make an argument on appeal that had no chance of success.

**b.    Failure   to   Preserve   Legal   Insufficiency
       Argument**

Petitioner argues trial counsel was ineffective due to his failure to preserve, at trial, a challenge to the legal sufficiency of the evidence. On direct appeal, appellate counsel argued both that the verdict was against the weight of the evidence, and that the evidence was legally insufficient. Appellate counsel also suggested that if the Fourth Department declined to reach the legal insufficiency issue, then it should deem trial counsel ineffective due to his failure to make a timely trial order of dismissal to preserve the claim for review. Thus, appellate counsel did assert the claim that Petitioner contends was omitted. This claim of appellate counsel's ineffectiveness therefore is contradicted by the record.

Moreover, the Fourth Department correctly held that "inasmuch as [Petitioner]'s challenge to the legal sufficiency of the evidence is without merit, there is also no merit to his further contention that he was denied effective assistance of counsel because defense counsel failed to preserve that challenge for our review[.]" Cole, 111 A.D.3d at 1302 (citing People v. Stephenson, 104 A.D.3d 1277, 1279 (4th Dep't 2013) (holding that defendant's contention that defense counsel was ineffective for failing to preserve for our review his challenge to the legal sufficiency of the evidence was without merit because the court "reviewed the sufficiency of the evidence in determining whether the verdict is

against the weight of the evidence," and therefore "defendant was not prejudiced by defense counsel's failure to preserve the sufficiency contention"); other citations omitted). This was a correct application of federal law.

### c.    Failure to Timely Request Videotape Footage

Petitioner contends that trial counsel was ineffective in failing to submit a timely request for the videotape footage from the surveillance camera at Main and Court Streets. As appellate counsel explained to Petitioner in his April 15, 2013 letter, there was "no document in evidence which reveal[ed] when [Petitioner] requested that camera footage from defense counsel." (Resp't Ex. D). Because this claim would have relied on facts outside the record, appellate counsel could not have properly raised it on direct appeal. Appellate counsel did not render ineffective assistance in declining to raise a claim that the Fourth Department would have rejected as <u>dehors</u> the record and properly raised, if at all, in a CPL § 440.10 motion to vacate.

### d.    Failure to Investigate

Petitioner accuses trial counsel of failing to investigate his case, and failing to familiarize himself with "the record." These conclusory allegations do demonstrate ineffective assistance, because Petitioner has failed to show how the outcome of his trial would have been different but for counsel's unspecified failings. Therefore, he cannot demonstrate prejudice. <u>See</u>, <u>e.g.</u>, <u>Maddox v.</u>

Lord, 818 F.2d 1058, 1062 (2d Cir. 1987) ("[P]etitioner contends that her trial counsel unreasonably failed to investigate the prosecution's forensic evidence. Even assuming the failure to be unreasonable, petitioner has not met the second prong of the Strickland test because she has not shown that such alleged failure prejudiced her defense."). Appellate counsel cannot be faulted for failing to raise a meritless claim of ineffective assistance of trial counsel and, furthermore, the omission did not prejudice Petitioner because the claim had no chance of success of appeal.

### e.   Failing to Secure Alibi Witnesses

Petitioner contends that trial counsel erroneously failed to secure alibi witnesses. The Court cannot discern that Petitioner has ever identified any individuals who would have been willing or able to provide alibi testimony for him. Therefore, this claim is based on pure conjecture. Furthermore, as appellate counsel explained to Petitioner in his April 15, 2013 letter, there was nothing in the record concerning any refusal by trial counsel to secure alibi witnesses on Petitioner's behalf. Therefore, this was not an issue that appellate counsel properly could raise on direct appeal. Appellate counsel was not ineffective for declining to raise a claim that the Fourth Department would have rejected as dehors the record and properly raised, if at all, in a CPL § 440.10 motion to vacate.

###       f.    Failure to Demand Ruling on All Aspects of
                Omnibus Motion

Petitioner faults trial counsel for not objecting when the
trial court did not rule on all matters within his omnibus motion.[6]
Again, this claim is contradicted by the record. As appellate
counsel explained to Petitioner in a letter dated April 15, 2013,
the trial judge "did rule on all relevant matters particular to
[his] particular case. A court can only rule on issues or hearings
that are relevant to the particular case, regardless of what is
contained in the Omnibus Motion." (Resp't Ex. D). Because trial
counsel was not ineffective in his handling of the omnibus motion,
appellate counsel did not err in declining to assert such a claim
on direct appeal.

###       g.    Failure to Object to Non-Disclosure of Alleged
                Brady Material

Petitioner contends that the prosecutor committed misconduct
by allegedly withholding the victim's arrest record from the
defense. As appellate counsel explained to Petitioner in his April
15, 2013 letter, Kozub's arrest record was not "withheld" from the
defense; rather, the prosecution did not introduce it into
evidence. Therefore, the arrest record was not part of the record

---

[6]
CPL Article 255 lays out the general requirement of the pretrial omnibus
motion and the specific rules underlying the requirement that pretrial motions
should be combined in a single set of motion papers (i.e., an omnibus motion) and
heard by a single judge at an early stage in the proceedings. See § 8:1.The
omnibus motion, 7 N.Y. Prac., New York Pretrial Criminal Procedure § 8:1
(2d ed.).

on appeal, and trial counsel's handling of the arrest record was not an issue that appellate counsel properly could raise on direct appeal. Appellate counsel was not ineffective for declining to raise a claim that the Fourth Department would have rejected as <u>dehors</u> the record and properly raised, if at all, in a CPL § 440.10 motion to vacate.

### h. Failure to Argue Defective Indictment

Petitioner contends that trial counsel erroneously failed to argue that the indictment was defective because the victim, Kozub, perjured herself before the grand jury because she testified different there and at trial concerning which eye (left or right) was punched by Petitioner. "Merely pointing out inconsistencies is insufficient to support an allegation of perjury." <u>Ellis v. McGinnis</u>, No. 00-CV-3246(FB), 2001 WL 726983, at *4 (E.D.N.Y. June 28, 2001) (citing <u>United States v. Bortnovsky</u>, 879 F.2d 30, 33 (2d Cir. 1989) (presentation of a witness who recants or contradicts prior testimony should not be confused with perjury); <u>United States v. Gambino</u>, 59 F.3d 353, 365 (2d Cir. 1995) (even a direct conflict in testimony does not in itself constitute perjury)). Petitioner has not demonstrated that Kozub perjured herself before the grand jury or at trial. <u>See</u> <u>Ellis</u>, 2001 WL 726983, at *4 (finding that habeas petitioner could not demonstrate perjury by prosecution witness; "[a]t best, [witness]'s testimony at the . . . re-trial appears confused and inconsistent. Indeed,

his testimony differs on direct and re-direct at that trial—on direct he testified that there were two guns and on redirect he said there was only one set of sparks"). Appellate counsel was not ineffective in failing to assert a claim that trial counsel was ineffective in failing to make a meritless motion to dismiss the indictment.

## IV.  Pending Motions

### A.  Discovery

Under Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts, discovery is available only by leave of the court. A petitioner must support the request with reasons demonstrating "good cause" for invoking discovery mechanisms, namely, "specific allegations" that give the court "reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." Bracy v. Gramley, 520 U.S. 899, 904 (1997) (quotation omitted). Petitioner's pleadings do not approach the showing necessary under Bracy. The Motions to Compel Discovery (Dkt ##69 & 71) are denied with prejudice.

### B.  Appointment of Counsel

In determining whether it should appoint counsel under 28 U.S.C. § 1915(d) for indigents in civil cases, such as petitions for a writ of habeas corpus under 28 U.S.C. § 2254, the court first should "determine whether the indigent's position seems likely to be of substance." Hendricks v. Coughlin, 114 F.3d 390, 392 (2d Cir.

1997). Petitioner cannot meet this threshold showing, given that the Court has found that none of his claims warrant habeas relief. Petitioner's Motions to Appoint Counsel (Dkt ##54 & 70) are denied with prejudice.

### C.    Miscellaneous and Other Motions

Petitioner's Motions to Suppress Evidence (Dkt ##11 & 51) and Motions for Miscellaneous Relief (Dkt ##13, 14, 15, 16, 17, 18, 19, 25, 45, 48, 55, 56, 58, & 73)Dkt ##54 & 70 appear to relate either to Petitioner's requests for appointment of counsel or his demands that Respondent produce documents or respond to interrogatories. For the same reasons set forth in Sections A and B, <u>supra</u>, these motions are denied with prejudice.

### CONCLUSION

For the reasons stated above, the Petition (Dkt #1) for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the Petition is dismissed. Petitioner's pending motions (Dkt ##11, 13, 14, 15, 16, 17, 18, 19, 25, 45, 48, 50, 51, 54, 55, 56, 58, 69, 70, 71, & 73) are denied with prejudice. Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, the Court declines to issue a certificate of appealability. <u>See</u> 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

S/Michael A. Telesca

_____

HON. MICHAEL A. TELESCA
United States District Judge

Dated:    January 29, 2018
          Rochester, New York.50,